(No. 19509.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EMILIO MANES, Plaintiff in Error.

*Opinion filed June 19, 1929.*

JOSEPH M. FIORE, (ALLISTER S. LANGILLE, and CHARLES M. McDONNELL, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and JOEL C. FITCH, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Emilio Manes was indicted in the criminal court of Cook county at the February term, 1928. Three counts of the indictment charged him with raping Ida Fusso, a girl fifteen years of age. The fourth count of the indictment charged defendant with contributing to the delinquency of a child. The indictment charged the offenses were committed on the 26th day of August, 1927. The fourth count charged that on August 26, 1927, defendant

did certain acts tending to render Ida Fusso, a female child under the age of eighteen years, to-wit, of the age of fifteen years, a delinquent child, and that he then and there ravished and carnally knew said Ida Fusso. Defendant pleaded not guilty to the indictment and a trial was had at the June term, 1928. The jury found defendant guilty of rape as charged in the indictment. Motions for a new trial and in arrest of judgment were made and overruled. After judgment was rendered on the verdict a motion was made to vacate the judgment and grant a new trial on the ground of newly discovered evidence. That motion was made in August, 1928, and it, together with the affidavits in support, is preserved in the bill of exceptions. The motion was overruled, and defendant brings the record here by writ of error for review.

Defendant is related to Ida Fusso by marriage. The parties to the suit and nearly all the witnesses are Italians. Manes lived in this country for five years and returned to Italy to visit his old home. Ida's father wrote to him requesting him to bring Ida when he came home. She had never lived in the United States but resided in Italy. She came to this country with defendant, and testified she arrived at Kensington station, Chicago, August 27, 1927. It will be observed the crime was charged in the indictment to have been committed August 26, 1927. Ida testified defendant took her to a room as soon as she got off the train and told her to go to sleep. Defendant and Ida's father knew each other in Chicago. Defendant was to take Ida to the home of Dominic Bruno, which was five miles from the Kensington station. Ida testified she refused to lie in the bed in the room where defendant took her, and he began trying to choke her and "do things to her." She fell on the floor, and he picked her up and put her on the bed and then had intercourse with her. She testified she was in the room with defendant near Kensington station about an hour and a half and "then he started to do things with

me," and after that he took her in a cab to Bruno's house. She testified he raped her three times while they were in that room; that for an hour and a half before the act was accomplished the first time they were struggling and she was trying to get away from him. He told her not to tell anything to her father. She could not describe or locate the building or room where she said defendant took her, near Kensington station. She said they walked to the room and it did not take very long; that after the attacks were over her clothing was "full of blood." On cross-examination she testified that she and defendant arrived on the train at Kensington station about four o'clock in the evening of August 27, 1927. Later she said she took the train in New York at four o'clock and that it was dark when they arrived at Kensington station. She could not describe the room but said she thought it was in her father's residence. They went down a couple of steps to enter the room. Defendant opened the door and entered the room without any key. The door opened from the street and there was no hallway. The room had a bed in it. After they entered the room defendant locked the door with a key. She said while they were in the room she struggled with defendant but does not say she made any outcry. She did not tell her father what had happened to her for two months.

The prosecuting witness talked Italian and could not speak English. There was a good deal of difficulty in getting a satisfactory interpreter to interpret. After the third interpreter was called the witness stated she told her father about three days after the act was committed. She testified she arrived at the Bruno home August 27, about 10:00 or 10:30 o'clock at night. Bruno is a relative. She was shown Exhibit 1, and testified it contained her signature. She testified the notary told her to sign it. She said it was written by her, but that Bob White, the son of the family she stayed with three weeks after she arrived in

America, told her to write it. She denied knowing a man named Candreva in Italy. She was asked if she did not testify in the municipal court, on the preliminary, that she arrived in Chicago the 26th or 27th of August, at 9:30 o'clock. She admitted she so testified. She said she could not remember the time she arrived but she was taken to Bruno's house about 10:30 o'clock. She denied telling White, at whose house she lived for three weeks, that her father coached her to accuse defendant of the crime. She repeated she was in the room with defendant at Kensington an hour and a half when he committed the crime and that he committed three offenses.

Dr. Beardslee testified for the People that he had practiced medicine since 1919; that on the second day of September, 1927, he made a physical examination of Ida Fusso and found that the hymen was ruptured. There was no inflammation. He gave it as his opinion that the rupture occurred within two weeks before the time he examined her. On cross-examination he said the rupture was old and might have existed four weeks. He found no bruises on the body and nothing abnormal except the rupture, and that might have been caused by more than one thing.

Dominic (or Tony) Fusso, Ida's father, testified that before August 27, 1927, Ida lived in Italy. She was sent over here by her grandfather, with defendant, a cousin of witness. He went to the train in Englewood, at Sixty-third and Englewood streets, on August 27 at night and was there about half-past ten. The train had already arrived before he got there, and he went to the home of Dominic Bruno and there found his dauhgter. He left Bruno's house about half-past eleven. In the next few days he observed Ida's underwear was bloody and asked her what was the matter with her clothes. She said that was nothing. He testified his wife had told him Ida did not care to eat, lay in bed and was sick every day. He went to a doctor and asked him to go and examine Ida. After the exami-

nation the doctor told him, "Tony, somebody play with your daughter." That was September 2. Witness talked to his daughter about it and in about two months she confessed. He denied on cross-examination that defendant and his father-in-law called on him and in the presence of his daughter and the witness inquired of his daughter whether defendant had committed the act she complained of. That is substantially all the testimony in chief for the State.

Defendant testified in his own behalf and denied that he had committed the crime charged. He accompanied Ida from Italy to this country. They left New York the 25th of August, about 6:00 o'clock in the evening, and arrived at Kensington the 26th of August, about 9:30. They did not ride in a sleeping coach from New York to Chicago. He testified when they reached Kensington station he and Ida left the train and took a cab for 7526 Ellis avenue, which was the home of Dominic Bruno. He did not know at that time where Fusso lived. He testified they made no stop from the time they took the cab at the station until they arrived at the home of Bruno, about ten o'clock or ten minutes to ten. A number of his and Ida's relatives were at Bruno's house when they arrived. About half an hour after they arrived Fusso came with witness' father-in-law. He denied taking Ida to a room before they took the cab for Bruno's house and denied he had done anything improper to her. He testified that in October following their arrival in Chicago, Fusso requested him and his father-in-law to go to Fusso's house. They went, and when they arrived Fusso accused witness of taking advantage of his daughter. Witness' father-in-law asked Ida who caused her injury. She answered, "Manes hasn't anything to do with it, but I was dishonored by somebody in Italy—Candreva."

Defendant is a married man and has two children. His wife resides in Italy. His father-in-law and Ida are related

by marriage. He testified he never lived in Kensington and was never employed there. He and the prosecuting witness left New York and came to Chicago, arriving at Kensington station, on the Michigan Central, at 9:30.

Dominic Bruno testified for defendant that he lived at 7526 Ellis avenue and was acquainted with defendant for about six years; also with Tony Fusso about thirteen years. He remembered when Ida, Fusso's daughter, arrived in Chicago from Italy. She came to witness' house about ten o'clock. She stayed about an hour. There was nothing about Ida that attracted his attention as being not normal. There were about thirty or forty people present. They were waiting for Ida's arrival. Witness had never seen her before.

Joe Citz testified for defendant that he was acquainted with Ida and defendant. Ida is his niece and defendant is his son-in-law. He testified that in October he asked Ida some questions in the presence of his son-in-law. By that time, the record shows, there had been some talk about Ida's having been wronged and that her father accused defendant. He testified that he asked Ida who had wronged her, and she said someone over in Italy. That conversation occurred in the house of Tony Fusso.

Robert White testified Ida had been living with his family about two months. He identified defendant's Exhibit 1. Witness did not ask Ida to make the statement in the exhibit and did not threaten to report her if she did not make it. She made it of her free will, and witness took her to a notary public and heard him administer the oath. She asked witness to take her to a notary.

Exhibit 1 is an affidavit made by Ida in Italian. It was translated, and in substance stated that when she came to America she found her father living with a woman for eight years without being married to her and that he had four children; that the woman treated her like a dog and told people Ida's father was sleeping with Ida. The woman

left his home, and he told Ida if he could find her he would put Ida out and take the woman. The affidavit stated Ida did not want to tell about defendant, but her father forced her to do so and scared her by threatening to send her back to Italy. The affidavit stated it was written voluntarily and nobody told Ida to make it.

Lillian White, daughter of Robert White, testified she saw Ida writing the affidavit. Her brother was present and her father was in the kitchen with her mother. No one said anything to Ida about writing a thing.

Mata Aloi testified he heard Ida state in the municipal court, on the preliminary, that she arrived in Chicago on the 26th day of August, 1927, at 9:30. He testified he is related to defendant.

Defendant was recalled as a witness and denied he ever committed the crime charged in the indictment, either on the 26th or 27th. He testified they arrived at Kensington August 26. He had never been in Kensington before.

This concluded the testimony on both sides on the trial. The witnesses were mostly Italians and mostly related to defendant or the prosecuting witness. As we understand it, all spoke some English except the prosecuting witness, and no interpreter was used except for her. Most of them spoke English imperfectly, and the testimony, taken all together, is confusing. We do not propose to analyze the testimony or call particular attention to inconsistencies therein except to those in the testimony of the prosecuting witness. While there were other contradictions and inconsistencies in her testimony, there is one particular thing that we think calls for a reversal of the judgment. We think the testimony shows conclusively that defendant and Ida arrived at Kensington at 9:30. She so testified, and also testified they arrived about 4:00 o'clock, and that she did not know what time they arrived. The testimony also conclusively shows that they left the train at Kensington and went by taxi to the home of Bruno, five miles from

the station, and arrived there about 10:30. Ida testified they were in the room defendant took her to at Kensington an hour and a half before he did anything to her and that then he raped her three times before leaving the room. The abstract shows the complaint against defendant was filed by Tony Fusso and sworn to January 7, 1928, and charged defendant with committing the crime on September 22, 1927. Ida testified at the preliminary hearing that the crime occurred on August 26 or 27. The indictment charged the crime was committed August 26. On the trial Ida testified her arrival in Kensington and the date of the crime was August 27. Beside these discrepancies in dates, Ida testified defendant took her to a room near the station and had her there for an hour and a half before he raped her, and that before leaving the room he had accomplished that act three times. Within about an hour after the train arrived in Kensington they arrived at the Bruno home, which was five miles distant, traversing the route in a taxi without stop. That is too incredible to justify a conviction on her testimony, and she is the only witness who testified to the act. We do not give much consideration to Dr. Beardslee's testimony, and cannot consider it as corroborating Ida to the extent of justifying the verdict of guilt.

This court and many others have approved the statement of Sir Matthew Hale that the accusation of rape is easily made and hard to prove and harder to be defended by the party accused. By Ida's own testimony there was at least one other person who knew she and defendant went to the room near Kensington station. The house was occupied, she said, but she made no outcry to attract anyone's attention. She made no complaint when they arrived at Bruno's house, nor until about two months later, after she was questioned by her father. The law requires that the proof establish beyond a reasonable doubt that the defendant is guilty of the crime charged or there can be no conviction. This court has always been reluctant to reverse a

judgment in a criminal case on the ground that the evidence does not establish guilt beyond reasonable doubt, as questions of fact are for the jury, and we would not substitute our judgment for their judgment in a case merely of conflicting testimony, but we have often held that it is the duty of the court, where the evidence leaves a reasonable doubt, to reverse a judgment of conviction. Defendant was sentenced to the penitentiary for a period of five years, and it is this court's duty to guard a citizen against his liberties being taken from him except by the quantum of evidence that the law requires. The crime charged was a very revolting one and calculated to stir the passions and prejudices of a jury. Defendant had traveled from Italy to Chicago with Ida, and it is strange that he attempted no assault until arriving in Chicago, and then in a place where he was unacquainted; that he walked up to the door, opened it, walked in and found a bed-room with a bed in it, and in the time described by the prosecuting witness raped her three times, then drove her to the home of a friend where her father was to meet her, and she made no complaint for two months, and only then when charged by her father. A man charged with a crime has a right to be tried according to law, and a conviction in disregard of law cannot be sustained. *People* v. *Newman,* 261 Ill. 11.

Thirty-five errors were assigned by defendant in this case. Many of them related to the proceeding on the motion to set aside the judgment and verdict after the motion for a new trial had been overruled. We shall not notice those, but because we are convinced that the evidence was not sufficient to prove defendant guilty beyond a reasonable doubt, the judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*